IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

H. TRAVIS REGENSBERG,

Plaintiff,

v. No. 1:26-cv-00319-LF-JMR

NEW MEXICO LIVESTOCK BOARD,
MATTHEW K. ROMERO, individually
and in his official capacity, and
DARRON "SHAWN" DAVIS,
individually and in his official capacity,

Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on the motion of defendants New Mexico Livestock Board ("NMLB"), Matthew K. Romero, and Darron "Shawn" Davis to dismiss plaintiff H. Travis Regensberg's complaint for failure to state a claim upon which relief may be granted (Doc. 5). Mr. Regensberg filed a response on March 13, 2026, Doc. 15, and Defendants filed a reply on April 2, 2026, Doc. 17. Having reviewed the briefings, the law, and otherwise being fully advised, the Court GRANTS IN PART and DENIES IN PART the motion. The Court dismisses Mr. Regensberg's 42 U.S.C. § 1983 claim against NMLB, and Mr. Romero and Mr. Davis in their official capacities, with prejudice. The Court dismisses Mr. Regensberg's § 1983 claim against Mr. Romero and Mr. Davis in their individual capacities without prejudice but defers remanding Mr. Regensberg's state law claims to state court to allow Mr. Regensberg an opportunity to amend his complaint.

## BACKGROUND

### I. Facts Alleged

Mr. Regensberg alleges the following facts in his complaint. Defendant Matthew Romero and Mr. Regensberg "have a long-running history of serious conflict and animosity" spanning since "their late teens or early twenties." Doc. 1-1 ¶¶ 18–19. After Mr. Romero became a livestock inspector with NMLB, he "began harassing and confronting Regensberg at various events." *Id.* ¶ 28. Mr. Regensberg describes several incidents in which he alleges that Mr. Romero used his authority as a NMLB inspector to harass him, but states that "[t]he major incident where Romero abused his law enforcement authority with Regensberg occurred ten years before the incident" giving rise to this case. *Id.* ¶¶ 21–32.

On November 29, 2014, Mr. Regensberg agreed to purchase livestock but requested that the seller wait three days to deliver the animals. *Id.* ¶ 33. The seller instead delivered the cattle immediately to a holding pen on someone else's property, and Mr. Regensberg was not present for the delivery, had not yet paid for the livestock, and had not yet received a bill of sale. *Id.* ¶¶ 34–35. On December 3, 2014, Mr. Romero accused Mr. Regensberg of violating New Mexico law by purchasing and transporting the seller's cattle without a bill of sale. *Id.* ¶ 36. Mr. Regensberg denied the allegation and told Mr. Romero to come back with a search warrant if he wanted to search his property. *Id.* ¶¶ 37–38. Mr. Romero obtained a search warrant that day and searched Mr. Regensberg's property but did not find the livestock. *Id.* ¶ 39. Mr. Romero then obtained a second search warrant, but before it could be executed, NMLB Deputy Director Ray Baca told Mr. Romero that the livestock had been returned, and the case was closed. *Id.* ¶¶ 40–42.

Mr. Regensberg subsequently filed a suit for damages in federal court against NMLB officials and others involved in the incident. *Id.* ¶ 43. During the pendency of that case, Mr. Romero made an uncorroborated allegation that Mr. Regensberg had hired someone to kill him. *Id.* ¶ 44. Mr. Regensberg eventually dismissed the case after an agreement with NMLB leadership that Mr. Romero "would never again conduct business on behalf of the NMLB with Regensberg for any purpose." *Id.* ¶ 45. Mr. Romero did not conduct inspections involving Mr. Regensberg until nearly nine years later. *Id.* ¶¶ 46–47.

On the morning of November 3, 2023, several stray cattle entered Mr. Regensberg's property through an open gate. *Id.* ¶ 49. Mr. Regensberg herded the cattle into an enclosure and called two different NMLB inspectors to request that they remove the cattle from his property. *Id.* ¶¶ 50–51. One of the inspectors, Tim Martinez, agreed to remove the cattle that afternoon. *Id.* ¶ 51. Later that day, Mr. Regensberg's neighbor, Mark Fernandez, called Inspector Martinez to report that his cattle were missing. *Id.* ¶ 52. Inspector Martinez believed that the stray cattle that Mr. Regensberg reported earlier were probably the cattle that Mr. Fernandez was missing. *Id.* Inspector Martinez then called Mr. Regensberg to advise him that Mr. Fernandez would send someone to pick up the stray cattle. *Id.* Mr. Regensberg asked for proof that Mr. Fernandez was the cattle's owner; Inspector Martinez sent Mr. Regensberg an invoice showing that someone other than Mr. Martinez was the owner and that the cattle had been purchased after the strays had already entered Mr. Regensberg's property. *Id.* ¶¶ 53–54. Mr. Regensberg refused to release the cattle to Mr. Martinez and asked Inspector Martinez to retrieve the cattle. *Id.* ¶ 54.

By feeding time later that afternoon, no one from NMLB had retrieved the cattle, and Mr. Regensberg moved the stray cattle in with his cattle to provide them with food and water. *Id.* ¶¶ 57–58. Around 5:37 p.m., with dusk approaching, Inspector Martinez called Mr. Regensberg

back and told him that Mr. Romero would be arriving on his property to retrieve the stray cattle. *Id.* ¶¶ 59–60. Mr. Regensberg requested that another NMLB inspector retrieve the estrays, but Inspector Martinez told him that no one else was available. *Id.* Mr. Regensberg then asked that NMLB send an inspector the following day, as it was almost dark and the estrays already had been fed and watered. *Id.* ¶ 60. Inspector Martinez responded that Mr. Romero would retrieve the cattle that day. *Id.* ¶ 61.

Despite an NMLB policy against picking up cattle in the evening, Mr. Romero arrived at Mr. Regensberg's property at dusk with two New Mexico State Police ("NMSP") Officers. *Id.* ¶¶ 63, 69. Mr. Regensberg met the officers at the entrance gate and stated that he would let a livestock officer other than Mr. Romero onto his property. *Id.* ¶¶ 71–72. Mr. Romero threatened to arrest Mr. Regensberg if he did not allow him onto the property to retrieve the estrays. *Id.* ¶ 72. At the request of one of the NMSP officers, Mr. Regensberg agreed to let the NMSP officers onto his property to retrieve the cattle without Mr. Romero. *Id.* ¶ 73. Mr. Romero refused. *Id.* Mr. Regensberg then requested that Mr. Romero call his supervisor. *Id.* ¶ 74.

Mr. Romero called defendant NMLB Deputy Director Shawn Davis and put him on speaker. *Id.* ¶ 75. Mr. Davis "angrily and decisively told Romero to arrest Regensberg for obstructing 'their' duties as livestock officers." *Id.* ¶ 76. One of the NMSP officers intervened and suggested that Mr. Romero not arrest Mr. Regensberg if Mr. Regensberg agreed to allow Mr. Romero on his property to retrieve the estrays. *Id.* ¶¶ 78–79. Mr. Romero and Mr. Regensberg both agreed. *Id.* ¶ 80. Mr. Regensberg asked Mr. Romero if he would be paid for feeding the estrays, and Mr. Romero stated only that Mr. Regensberg could apply for reimbursement. *Id.* ¶ 81.

Mr. Romero instructed Mr. Regensberg to open the gate to his property and leave it open, and Mr. Regensberg did so. *Id.* ¶¶ 82–83. Mr. Regensberg opened the gate, led Mr. Romero and the NMSP officers to the estrays, then left to his residence on the property. *Id.* ¶¶ 84–85. Mr. Romero spoke with Mr. Davis on the phone, and Mr. Davis still wanted Mr. Regensberg to be arrested. *Id.* ¶ 86. Mr. Romero told the NMSP officers to arrest Mr. Regensberg for obstruction, but the officers declined to do so because there was no probable cause for an arrest. *Id.* ¶¶ 87–88. Mr. Romero told the officers that "he would find some violation with which to charge Regensberg." *Id.* ¶ 89.

Mr. Romero, the NMSP officers, and two other individuals drove both the estrays and Mr. Regensberg's cattle from a pasture into an arena pen. *Id.* ¶ 90. Because it was after dark, Mr. Romero did not see that a second gate to the arena was open, and the cattle and estrays left the arena through the open gate before then leaving Mr. Regensberg's property through the entrance gate that Mr. Romero had instructed Mr. Regensberg to leave open. *Id.* ¶ 91. Mr. Romero blamed Mr. Regensberg for letting the cattle escape, but one of the NMSP officers stated that it was their fault for leaving the gate open and that they should retrieve the cattle for Mr. Regensberg. *Id.* ¶ 92. Mr. Regensberg agreed to help round the cattle back up if Mr. Romero was not involved. *Id.* ¶ 93. Mr. Romero attempted to help recover the cattle but was more concerned about recovering the estrays than Mr. Regensberg's cattle. *Id.* ¶¶ 94–96. Mr. Romero pushed one group of Mr. Regensberg's cattle, along with the strays, to Mr. Fernandez's property. *Id.* ¶ 96. Once they reached Mr. Fernandez's property, one of Mr. Regensberg's steers continued walking down the road. *Id.* ¶ 97. Mr. Romero instructed the others to let the steer go because it belonged to Mr. Regensberg, and no one retrieved the steer. *Id.* Mr. Romero then returned the remainder of Mr. Regensberg's cattle to Mr. Regensberg's property. *Id.* ¶ 98.

Once the cattle were returned to his property, Mr. Regensberg asked Mr. Romero to count them to make sure all twenty-two were returned. *Id.* ¶ 99. After several counts, everyone agreed that one steer was missing. *Id.* Mr. Romero looked for the steer but could not find it. *Id.* ¶ 100. The following day, Mr. Regensberg looked for the steer but also could not find it. *Id.* ¶ 101. Around 2:00 a.m. the day after, NMSP dispatch called Mr. Regensberg to notify him that his steer may have been spotted. *Id.* ¶ 102. Mr. Regensberg, who was ill with high diabetic sugar levels, told NMSP dispatch to have Mr. Romero retrieve the steer because Mr. Romero was responsible for the steer escaping. *Id.* Mr. Romero then retrieved the steer but impounded it rather than returning it to Mr. Regensberg. *Id.* ¶¶ 103–04. Mr. Romero sent Mr. Regensberg a text message stating that the steer had been impounded and that he would let him know the steer's location so that Mr. Regensberg could collect the steer and pay the impound fees. *Id.* ¶ 105.

Mr. Regensberg emailed Mr. Romero and Mr. Davis to request that NMLB return the steer to him free of charge. *Id.* ¶¶ 106, 117. Mr. Regensberg searched for Mr. Davis on a social media website and found Mr. Davis's social media profile. *Id.* ¶ 118. On the profile, Mr. Regensberg found an image of a man pointing a pistol directly at the camera, and at the bottom of the photo was Mr. Davis's name. *Id.* Mr. Regensberg assumed the man in the photo was Mr. Davis, and he sent a copy of the photo to Mr. Davis to let him "know he now was being (sic) to understand Davis'[s] temperament." *Id.* ¶ 119. Mr. Davis later stated in a pre-trial interview that he felt threatened by Mr. Regensberg sending him the photo, though he admitted the photo was taken from his social media profile and was of a relative or friend. *Id.* ¶ 120.

NMLB never returned the steer to Mr. Regensberg nor told Mr. Regensberg where the steer was impounded. *Id.* ¶ 107. Several days later, on November 10, 2023, Mr. Romero

transported the steer to Belen, New Mexico, and sold it at auction. *Id.* ¶ 109. On November 14, Mr. Regensberg filed a civil complaint against Mr. Romero and NMLB for the value of the steer. *Id.* ¶ 110. On November 29, 2023, Mr. Romero filed a criminal complaint against Mr. Regensberg, alleging four criminal charges: (1) unlawful branding (a felony); (2) unlawful disposition of an animal (a misdemeanor); (3) use of a telephone to terrify, intimidate, threaten, harass, etc. (a misdemeanor); and (4) livestock running at large (a misdemeanor). *Id.* ¶ 111.

The court found no probable cause for NMLB's allegation of unlawful branding and dismissed the charge at a preliminary examination. *Id.* ¶ 129. Mr. Romero stated in support of the criminal charge that three days after capturing Mr. Regensberg's steer, he discovered that the NMLB database showed no record of Mr. Regensberg renewing the steer's brand. *Id.* ¶ 123. However, Mr. Regensberg had a receipt showing that he had timely paid the renewal fee, as well as a certification of brand card issued by the NMLB. *Id.* ¶ 124.

The remaining charges were set for trial, and on the morning of the trial, the court granted Mr. Regensberg's motion to quash the amended criminal complaint and dismissed the complaint with prejudice. *Id.* ¶ 130. The NMLB appealed the dismissal to the state district court, and the state district court also dismissed the criminal complaint with prejudice. *Id.* ¶¶ 131, 133.

## II. Procedural History

On November 2, 2025, Mr. Regensberg filed a complaint against Defendants in New Mexico state court, raising claims of malicious abuse of process and vindictive prosecution, defamation, violation of the New Mexico Civil Rights Act ("NMCRA"), and conspiracy to violate rights under 42 U.S.C. § 1983. Doc. 1-1 at 1, 20–30. Defendants removed the case to this Court on February 9, 2026, invoking the Court's subject matter jurisdiction over Mr.

Regensberg's § 1983 claim and requesting that the Court exercise supplemental jurisdiction over Mr. Regensberg's state law claims. Doc. 1 ¶¶ 4–5.

On February 16, 2026, Defendants filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Procedure 12(b)(6). *See* Doc. 5. Plaintiff filed a response in opposition to the motion on March 13, 2026. *See* Doc. 15. Defendants filed their reply in support of the motion on April 3, 2026, *see* Doc. 17, and briefing was completed on the motion that day, *see* Doc. 18.

## ANALYSIS

### I. The Court's consideration of documents attached to Defendants' motion does not convert the motion to dismiss into a motion for summary judgment.

Upon consideration of a Rule 12(b)(6) motion to dismiss, the Court focuses on the pleadings. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). "Ordinarily, consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence." *Id.* at 1264 n.24. However, courts may properly consider facts subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. *Id.*; *see also Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (concluding that the district court properly took judicial notice of all of the materials in a state court file referenced in the complaint when considering a motion to dismiss). Courts also may consider documents beyond the pleadings if they are referred to in the complaint, are central to the plaintiff's claims, and the parties do not dispute their authenticity. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

Defendants attached documents from the criminal case filed against Mr. Regensberg to their motion. *See* Docs. 5-1, 5-2, 5-3, 5-4. Mr. Regensberg states that "[i]f these documents are

determined to convert Defendants' Motion to Dismiss into a motion for summary judgment, [he] must be allowed to respond to the motion as a summary judgment motion and attach pertinent materials to such response." Doc. 15 at 1. Defendants reply that the Court need not convert their motion into one for summary judgment because Mr. Regensberg cites the criminal case "at least four times" in his complaint "and relies on this case and its outcome for his claims against Defendants." Doc. 17 at 1–2.

The Court agrees with Defendants that its consideration of the exhibits attached to the motion will not convert the motion into one for summary judgment. Mr. Regensberg refers to the state criminal case in detail in his complaint, and the case is central to Mr. Regensberg's civil conspiracy, malicious abuse of process, and state constitutional claims. *See* Doc. 1-1 at 16–26, 28–30. Further, Mr. Regensberg has not disputed the authenticity of the exhibits attached to the motion. *See Alvarado*, 493 F.3d at 1215. The Court also may take judicial notice of the state cases referenced in Mr. Regensberg's complaint. *See Pace*, 519 F.3d at 1072. The Court's consideration of the exhibits therefore does not convert the motion to dismiss into a motion for summary judgment.

## II. The Court dismisses Mr. Regensberg's 42 U.S.C. § 1983 civil conspiracy claim.

In his complaint, Mr. Regensberg pleads pursuant to 42 U.S.C § 1983 that Defendants conspired together to maliciously prosecute Mr. Regensberg and deprive him of his civil rights. Doc. 1-1 ¶¶ 135–41. In their motion, Defendants argue that this claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because (1) NMLB, and Mr. Romero and Mr. Davis in their official capacities, are not subject to suit under § 1983; and (2) Mr. Romero and Mr. Davis, in their individual capacities, are entitled to qualified immunity. Doc. 5 at 21–23; Doc. 17 at 11–12.

Under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Alvarado*, 493 F.3d at 1215). However, the Court must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Although a complaint need not contain "detailed factual allegations," it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Moreover, if factual allegations in a complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191 (internal quotations omitted).

Section 1983 of title 42, United State Code, provides a cause action against state officials in their individual capacities when those officials violate constitutional or other federally protected rights. *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). Section 1983 creates the cause of action but does not create any substantive rights; those rights must come from the Constitution or federal statute. *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002). To state a claim under § 1983, a plaintiff therefore must allege a violation of a federally protected right and "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The defense of qualified immunity may be raised in response to a § 1983 claim. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Estate of Taylor v. Salt Lake City*, 16 F.4th 744, 757 (10th Cir. 2021) (quotations omitted). Therefore,

> [o]nce a defendant raises qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has alleged a violation of federal law. If the answer is "yes," then the court must decide whether the right was clearly established when the alleged violation occurred.

*Marino v. Mayger*, 118 F. App'x 393, 398 (10th Cir. 2004) (citation and footnote omitted); *see also Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (specifying that courts may address either question first). The plaintiff bears the burden of showing "both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988). If the plaintiff cannot make this showing, "the defendant prevails." *Id.* Still, "[a] defendant asserting qualified immunity at the motion to dismiss stage faces a higher bar than those asserting the defense at the summary judgment stage" because "the court analyzes only the defendant's conduct *as alleged in the complaint*." *Stepp v. Lockhart*, 168 F.4th 1286, 1301 (10th Cir. 2026) (quoting *Luethje v. Kyle*, 131 F.4th 1179, 1187 (10th Cir. 2025)).

A. <u>The complaint fails to state a § 1983 claim against NMLB and against Mr. Romero and Mr. Davis in their official capacities</u>.

Defendants argue that Mr. Regensberg fails to state a claim against NMLB under 42 U.S.C. § 1983, because NMLB is a governmental entity and not a "person" within the meaning of § 1983. Doc. 5 at 22–23. Mr. Regensberg did not address this argument in his response, instead focusing his opposition on whether the individual defendants were entitled to qualified immunity. *See* Doc. 15 at 20–22.

States agencies that are considered "arms of the state" are immune from suit under the Eleventh Amendment and are not considered "persons" reachable under § 1983. *Will v.*

*Michigan Dep't of State Police*, 491 U.S. 58, 69–70 (1989). Likewise, state officials sued in their official capacities are not "persons" reachable under § 1983 because such a suit "is not a suit against the official but rather is a suit against the official's office." *Id.* at 71. Here, Mr. Regensberg has sued NMLB, a state agency. Doc. 1-1 at 1, 3. Mr. Regensberg makes no argument that NMLB should not be considered an arm of the state for purposes of his § 1983 claim, nor does he address Defendants' argument that NMLB is unreachable under § 1983. *See* Doc. 15 at 9–11; 20–21; *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 622 n.5 (D.N.M. Mar. 22, 2007) ("Failure to respond to an argument is generally deemed an acquiescence."). Mr. Regensberg also has sued Mr. Romero and Mr. Davis in both their individual and official capacities. Doc. 1-1 ¶¶ 12–13. Mr. Regensberg does argue that Mr. Romero and Mr. Davis are subject to suit under § 1983, but he does not specify whether this liability extends beyond their individual capacities. *See* Doc. 15 at 9–11, 20–21.

The law is clear that neither state agencies nor state officials sued in their official capacity are reachable under § 1983. *Will*, 491 U.S. at 69–70; *see also Riggs v. Baca*, No. 1:18-CV-00485-JHR-KK, 2019 WL 1316464, at *3 (D.N.M. Mar. 22, 2019) (dismissing § 1983 claims against NMLB and individual defendants sued in their official capacities). Mr. Regensberg presents no argument to the contrary. *See Mulford*, 242 F.R.D. at 622 n.5. The Court therefore agrees with Defendants that the § 1983 claim against NMLB, and against Mr. Romero and Mr. Davis in their official capacities, must be dismissed with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

B. Mr. Romero and Mr. Davis, in their individual capacities, are entitled to qualified immunity as to Mr. Regensberg's § 1983 civil conspiracy claim.

To state a valid claim of conspiracy under § 1983, "a plaintiff must show at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021) (quotations omitted). The plaintiff "must allege specific facts showing an agreement and concerted action amongst the defendants. Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* (quotations omitted). The plaintiff need not prove that each alleged conspirator "knew the 'exact limits of the illegal plan,'" and "[a]n express agreement among all the conspirators is not a necessary element of a civil conspiracy." *Id.* (quoting *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990)). Rather, the plaintiff must show "that there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences." *Id.* at 1024–25 (citation modified).

A plaintiff must allege not only a conspiracy to deprive civil rights, "but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990) (quoting *Landrigan v. City of Warwick*, 628 F.2d 736, 742–43 (1st Cir. 1980)). "This is because the essence of a § 1983 claim is the deprivation of the right rather than the conspiracy." *Id.* Therefore, should the complaint not adequately plead a deprivation of constitutional rights, the conspiracy claim necessarily fails. *See Morphew v. Chaffee Cnty.*, 172 F.4th 802, 816 (10th Cir. 2026) (stating that a plaintiff's "conspiracy claim rises or falls based on the sufficiency" of his allegations of an underlying constitutional violation); *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1231

(10th Cir. 2020) (concluding that a conspiracy claim based on false arrest was properly dismissed where the plaintiff could not show false arrest).

1. *The complaint fails to adequately allege a conspiracy to cause malicious prosecution in violation of the Fourteenth Amendment.*

Mr. Regensberg's sole count under § 1983, Count I, is a civil conspiracy claim; the remaining counts are state law claims. *See* Doc. 1-1 at 20–30. Count I is entitled, "Conspiracy to Cause Malicious Prosecution and Deprivation of Civil Rights." *Id.* at 20. Mr. Regensberg states the following in describing the underlying constitutional violation:

> Defendants, while acting under the color of law, conspired to bring groundless charges, lacking probable cause, against Regensberg and to maliciously pursue a trial to try to gain a conviction against Regensberg. This is a violation of Regensberg's constitutional rights by their improper use of the criminal process and leaving him fearful of future groundless criminal complaints filed against him by the NMLB.

*Id.* ¶ 136. Mr. Regensberg describes the actions he alleges Defendants undertook in furtherance of the conspiracy and alleges that these actions "violated the constitutional rights guaranteed to Regensberg by the Fourteenth Amendment of the United States Constitution and/or the laws of the United States." *Id.* ¶ 137. Mr. Regensberg does not refer to any other federal constitutional provision in Count I or anywhere else in the complaint. In short, Count I alleges that Defendants conspired to maliciously prosecute Mr. Regensberg in violation of the Fourteenth Amendment, and it is the only count that purports to allege a federal constitutional claim.

In the Tenth Circuit, when addressing § 1983 malicious prosecution claim, the Court must start with the common law elements of malicious prosecution to analyze whether a plaintiff has stated a claim. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1257 (10th Cir. 2007). As applicable here, the elements of the common law tort of malicious prosecution are: "(1) the defendant caused the plaintiff's continued . . . prosecution; (2) the original action terminated in favor of the

plaintiff; (3) there was no probable cause to support the . . . continued . . . prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Id.* at 1258. Because Mr. Regensberg relies on a conspiracy theory, he also must "allege specific facts showing an agreement and concerted action among defendants, . . . an agreement upon a common, unconstitutional goal, and concerted action taken to advance that goal." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (internal citations and quotation marks omitted).

Defendants argue that Mr. Regensberg's § 1983 claim does not sufficiently allege an underlying constitutional violation because "Plaintiff has only made conclusory allegations of conspiracy . . . ," and because his attempted conspiracy claim does not establish a "'meeting of the minds' amongst Defendants to deprive Plaintiff of his civil rights." Doc. 5 at 4–5. In his response, Plaintiff argues that "[t]he facts and that constitutional violations are alleged is adequate to put Defendants on fair notice of the cause of action." Doc. 15 at 11. Mr. Regensberg further references "due process violations of loss of Plaintiff's . . . steer, prosecution of meritless claims, and denial of equal protection for disparate treatment," and argues that his conspiracy claim allows for imputed liability towards Mr. Davis. *Id.* Mr. Regensberg also cites, for the first time, the Fourth Amendment in addition to the Fourteenth Amendment. *Id.* at 9. Mr. Regensberg also raises other alleged constitutional violations, such as entrapment, harassment, filing charges after misrepresenting the truth and withholding exculpatory information, threatening arrest without probable cause, and defamation. *Id.* at 21. Because none of these claims are made in Count I of the complaint, the Court will focus solely on whether Mr. Regensberg's allegations are sufficient to allege a conspiracy to cause malicious prosecution and deprivation of civil rights.

With regard to the allegations relating to a conspiracy, Plaintiff's complaint alleges that Mr. Romero and Mr. Davis agreed that Mr. Romero would go to Mr. Regensberg's property in violation of his earlier and longstanding agreement with NMLB, and that once Mr. Romero was there, Mr. Romero and Mr. Davis agreed that Mr. Regensberg should be arrested. But Mr. Regensberg was not arrested and was not deprived of any liberty interest on November 3, 2023, or later, and Mr. Regensberg does not purport to state a Fourth Amendment violation in Count I. *See* Doc. 1-1 ¶¶ 135–137(e). Plaintiff then alleges that Mr. Romero "pronounced he would find something he could charge Regensberg with." *Id.* ¶ 137(f). The complaint further alleges that Mr. Romero "admitted Davis 'wanted Regensberg arrested" and that Mr. Romero also "wanted to find some violation with which to charge Regensberg so he could be arrested." *Id.* ¶ 137(g). There is no allegation, however, that Mr. Romero and Mr. Davis agreed to cause malicious prosecution. The complaint only alleges that Mr. Romero—not Mr. Davis—filed a criminal complaint in which "Romero presented false, distorted, misleading and perjurious evidence." *Id.* ¶ 137(i). The only other mention of Mr. Davis and Mr. Romero is that they each stated in their pre-trial interviews that they viewed the picture that Mr. Regensberg sent to them as threatening. *Id.* ¶ 137(h). None of these allegations are sufficient to show that Mr. Davis and Mr. Romero had an agreement to maliciously prosecute Mr. Regensberg in violation of the Fourteenth Amendment. Indeed, Mr. Regensberg acknowledges that he "did not specifically allege conspiracy against Davis for the . . . prosecution of meritless claims." Doc. 15 at 11. Because Count I fails to allege a conspiracy to commit the alleged constitutional violation of malicious prosecution, it fails to state a claim and must be dismissed.

Mr. Regensberg appears to argue that other constitutional claims should be apparent from "[t]he facts and that constitutional violations are alleged." Doc. 15 at 11. But aside from explicit

references to malicious prosecution, the complaint only vaguely asserts that "Defendants' actions violated the constitutional rights guaranteed to Regensberg by the Fourteenth Amendment of the United States Constitution and/or the laws of the United States." Doc. 1-1 ¶ 137. Mr. Regensberg is correct that the federal rules only require that a complaint assert a "short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), but simply stating that Defendants' actions violated the Fourteenth Amendment and the laws of the United States does not provide sufficient notice that Mr. Regensberg is pleading due process and equal protection claims, *see Martinez v. U.S. Olympic Comm.*, 802 F.2d 1275, 1280 (10th Cir. 1986) ("The complaint must identify the statutory or constitutional provision under which the claim arises."); *Quarrie v. Bd. of Regents for N.M. Inst. of Mining & Tech.*, No. 1:23-cv-00546-MV-JFR**,** 2024 WL 278316, at *4 n.10 (D.N.M. Jan. 25, 2024) (declining to construe a Fourteenth Amendment claim from a complaint that invokes the Fourteenth Amendment but "does not allege which right under the Fourteenth Amendment . . . was violated, i.e., equal protection or due process"), *proposed finding and recommended disposition adopted by* 2024 WL 1345639 (D.N.M. Mar. 29, 2024). Regensberg's attempt to read these claims into the complaint in his response to Defendants' motion does not remedy this defect. *See Wroten v. Walmart*, No. 1:19-cv-01125-MV-JHR, 2020 WL 2364570, at *2 (D.N.M. Apr. 20, 2020) ("It is inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time.") (quoting *Boyer v. Bd. of Cnty. Comm'rs of Johnson Cnty.*, 922 F. Supp. 476, 482 (D. Kan. 1996))), *proposed findings and recommended disposition adopted by* 2020 WL 2330018 (D.N.M. May 11, 2020).

2. *Mr. Regensberg fails to carry his burden of showing that Mr. Davis's and Mr. Romero's conduct violated clearly established law.*

The Supreme Court recently confirmed that a malicious prosecution claim may be brought under the Fourth Amendment, but the Court declined to consider whether such a claim may also find a home in the Fourteenth Amendment. *See Thompson v. Clark*, 596 U.S. 36, 43 n.2 (2022) ("It has been argued that the Due Process Clause could be an appropriate analytical home for a malicious prosecution claim under § 1983. . . . But we have no occasion to consider such an argument here.").[1] The Tenth Circuit Court of Appeals, however, has recognized that a malicious prosecution claim may be brought pursuant to the Fourteenth Amendment. *See Novitsky*, 491 F.3d at 1257–58 (10th Cir. 2007) ("In this circuit, when addressing § 1983 malicious prosecution claims," courts "look to both the Fourth and Fourteenth Amendments.") (citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 –86 (10th Cir. 2004))). *But see Cordova v. City of Albuquerque*, 816 F.3d 645, 662 (10th Cir. 2016) (Gorsuch, J., concurring in judgment) (arguing that the Fourteenth Amendment does not provide an adequate basis for a malicious prosecution claim).

As discussed above, courts in the Tenth Circuit refer to the common law elements of malicious prosecution as the starting point of their analysis, but "the ultimate question is whether plaintiff has proven the deprivation of a constitutional right." *Novitsky*, 491 F.3d at 1257. The common law elements of malicious prosecution are:

---

[1] The Supreme Court's discussion suggests that Mr. Regensburg, under the facts alleged in the complaint, would not be able to plead a Fourth Amendment malicious prosecution claim. The *Thompson* Court noted that a Fourth Amendment claim requires a plaintiff to show that he or she was seized as a result of the malicious prosecution. 596 U.S. at 43 n.2. Mr. Regensburg never alleges in his complaint that he was detained or otherwise seized in connection with Defendants' actions. The Supreme Court presumed, however, that if a malicious prosecution claim exists under the Fourteenth Amendment, a plaintiff "would not have to prove that he was seized as a result of the malicious prosecution." *Id.*

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.[2]

*Novitsky*, 491 F.3d at 1258. And, because Plaintiff alleges a conspiracy to cause malicious prosecution, he also must allege specific facts showing an agreement between Mr. Davis and Mr. Romero to cause malicious prosecution, and concerted action among these defendants to advance the constitutional violation. *See Bledsoe*, 53 F.4th at 609.

Neither Plaintiff nor Defendants address the elements of malicious prosecution in their qualified immunity arguments, instead focusing on whether Plaintiff adequately alleged a conspiracy. *See* Doc. 5 at 3–6, 21–23; Doc. 15 at 9–11, 20–22; Doc. 17 at 3–4, 8–12. But as explained above, a § 1983 conspiracy cannot stand alone, and Plaintiff must also adequately allege an underlying constitutional violation. Even if Plaintiff had met his burden of adequately alleging a conspiracy to cause malicious prosecution in violation of the Fourteenth Amendment, Plaintiff fails to meet his burden of showing that Mr. Romero and Mr. Davis's conduct violated clearly established law.

Once the defense of qualified immunity is raised on a motion to dismiss, the plaintiff "bears the burden of establishing that the specific conduct alleged violated clearly established law." *Maho v. Hankins*, No. 1:19-cv-00182-KK-SCY, 2020 WL 2542010, at *19 (D.N.M. May 19, 2020) (citing *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019)); *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015)). A plaintiff wholly fails to meet this burden where he cites no

---

[2] These common law elements differ in significant ways from the elements of New Mexico's most analogous cause of action: malicious abuse of process. *See Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19. Though this action originates in New Mexico, the Court must refer to the common law elements rather than the New Mexico state law elements when analyzing Mr. Regensburg's § 1983 claim. *See Pierce*, 359 F.3d at 1288–89.

authority to support his argument that the constitutional violation was clearly established. *See id.* (finding that a plaintiff failed to meet this burden where he "neither presents a Supreme Court or Tenth Circuit case on point" and does not "cite any caselaw at all" in support of his claims); *Hernandez v. Norton*, No. 24-1025, 2025 WL 15599, at *2 (10th Cir. Jan. 2, 2025) (plaintiff failed to meet his burden where he "cites no cases to show that this conduct violates clearly established law").

Mr. Regensberg's arguments regarding clearly established law concern purported federal constitutional violations not alleged in the complaint, such as harassing the public and defamation.[3] Doc. 15 at 21. Mr. Regensberg does argue that

> it is well known and clearly established law harass [sic] the public, and cannot file charges where he has misrepresented the truth and withheld exculpatory information in the affidavit supporting criminal charges, cannot go onto a private person's property and argue and threaten him with arrest when other law enforcement officers with him have told him there is no probable cause for arrest and that the officer himself is being argumentative.

*Id.* But Mr. Regensberg cites no authority from the Supreme Court or the Tenth Circuit, or any other circuit, in support of this statement. *See id.* Mr. Regensburg cites to the Tenth Circuit's decision in *Clark v. Murch* in support of his argument that defamation was clearly established as a constitutional violation under these circumstances, but defamation is nowhere mentioned in *Clark*. *See* No. 22-1330, 2023 WL 5012096 (10th Cir. Aug. 7, 2023). Nor does *Clark* shed light on whether Mr. Romero's and Mr. Davis's conduct violated clearly established law; *Clark* held that the violations alleged *were not* clearly established, and the defendant officers were granted qualified immunity. *Id.* at *4–*5. The only other case that Mr. Regensberg cites, *Jacobson v.*

---

[3] Mr. Regensberg does allege defamation, but as a state law claim rather than a constitutional violation. *See* Doc. 1-1 ¶¶ 147–51; Doc. 15 at 16–17.

*United States*, deals with the affirmative defense of entrapment in a criminal case, not a civil malicious prosecution claim. *See* 503 U.S. 540.

Despite his burden, Plaintiff has produced no authority showing that the conduct of Mr. Romero or Mr. Davis violated clearly established law. Mr. Romero and Mr. Davis therefore are entitled to qualified immunity as to Plaintiff's malicious prosecution claim. *See Losavio*, 847 F.2d at 646. And because the sufficiency of Plaintiff's § 1983 conspiracy claim hinges on the validity of his malicious prosecution allegation, the § 1983 conspiracy claim must be dismissed. *See Morphew*, 172 F.4th at 816.

"If a court finds that a defendant is subject to qualified immunity, the court may dismiss with or without prejudice." *Encinias v. New Mexico Corrections Dep't*, 659 F. Supp. 3d 1227, 1245 n.9 (D.N.M. 2023) (dismissing claim with prejudice where plaintiff had been granted multiple opportunities to amend her complaint and no further amendment would be "likely to clearly establish the law on point"). Dismissal of a claim with prejudice may not be warranted where granting leave to amend a deficient pleading would not necessarily be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). The Court therefore dismisses Mr. Regensberg's § 1983 conspiracy claim without prejudice.

## III. The Court declines to remand Mr. Regensberg's state law claims to allow Mr. Regensberg the opportunity to amend his complaint.

A federal district court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The court may decline to exercise supplemental jurisdiction over related state law claims if "the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). Where all federal claims have been dismissed, the Tenth Circuit Court of Appeals has advised that courts "may,

and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)). The Court may also, however, defer remand of state law claims to allow the plaintiff the opportunity to amend his or her complaint to properly allege federal claims. *See Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1189–90 (D.N.M. 2014).

Mr. Regensberg's sole federal cause of action is his § 1983 civil conspiracy claim; the remainder of his claims are grounded in state law. Mr. Regensberg asks that "the case with only state claims be remanded back to state court for resolution" should the Court dismiss his federal claim. Doc. 15 at 22. However, Mr. Regensberg also requests leave to file a motion to amend his complaint. *Id.* The Court thus dismisses Mr. Regensberg's § 1983 claim against Mr. Romero and Mr. Davis in their individual capacities without prejudice, but the Court defers remanding Plaintiff's state law claims to allow Plaintiff an opportunity to amend his complaint. Because Defendants have filed a Rule 12(b) motion to dismiss, Plaintiff must either seek Defendants' written consent to file an amended complaint or file a motion to amend his complaint. *See* FED. R. CIV. P. 15(a).[4]

Mr. Regensberg shall have fourteen days from the date of this order to either obtain Defendants' consent to file an amended complaint or file a motion to amend his complaint. If Mr. Regensberg neither obtains Defendants' consent nor files a motion to amend by that

---

[4] Federal Rule of Procedure 15 provides that a plaintiff may amend his or her complaint once as a matter of course no later than "21 days after service of a motion under Rule 12(b)." FED. R. CIV. P. 15(a)(1)(B). After that point, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and the "court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).

deadline, the Court will decline to exercise its supplemental jurisdiction over his state-law claims and remand this matter to state court. *See Younger*, 77 F. Supp. 3d at 1190.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss (Doc. 5). The Court dismisses Mr. Regensberg's 42 U.S.C. § 1983 claim against NMLB and Mr. Romero and Mr. Davis in their official capacities with prejudice. The Court dismisses Mr. Regensberg's 42 U.S.C. § 1983 claim against Mr. Romero and Mr. Davis in their individual capacities without prejudice but defers remand of Mr. Regensberg's state law claims to allow Mr. Regensberg an opportunity to amend his complaint. Mr. Regensberg shall have fourteen days from the date of this order to either obtain Defendants' permission to file an amended complaint or to file a motion to amend his complaint with his proposed amended complaint attached to the motion. *See* D.N.M.LR-Civ. 15.1 ("A proposed amendment to a pleading must accompany the motion to amend."). Should Mr. Regensberg neither obtain Defendants' consent to file an amended complaint nor file a motion to amend within fourteen days, the Court will remand this matter to state court.

IT IS SO ORDERED.

Laura Fashing
United States Magistrate Judge